IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARES MOHAMMED,<br><br>   Plaintiff,<br><br> v.<br><br>THE PRUDENTIAL INSURANCE<br>COMPANY OF AMERICA,<br><br>   Defendant. | Civil Action No. 1:19-cv-3258 |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH PLAINTIFF'S SUBPOENAS TO SEDGWICK CLAIMS MANAGEMENT SERVICE, INC. AND MATRIX ABSENCE MANAGEMENT SERVICES, INC.

Pursuant to Federal Rules of Civil Procedure 26 and 45, Defendant The Prudential Insurance Company of America ("Prudential" or "Defendant"), by counsel, submits this Memorandum in Support of its Motion to Quash Plaintiff's Subpoenas to Sedgwick Claims Management Service, Inc. ("Sedgwick") and Matrix Absence Management Services, Inc. ("Matrix").

### I. INTRODUCTION

In this case, Plaintiff's employer Capgemini had purchased a group disability insurance contract from Prudential which provided that benefits payments would stop and coverage would end in the event that a disabled individual began earning at least 80% of his prior income at a new employer. In November 2018, Prudential learned that Plaintiff had started a new job at a different employer that was paying him over 80% of his prior income beginning in February of 2018 and accordingly terminated benefits in accordance with the group contract.

While not disputing these facts, Plaintiff nevertheless claims that benefits should continue because Prudential intentionally delayed making a decision to award disability benefits for over

thirteen months, from June 15, 2017 to July 24, 2018, when Prudential reinstated benefits retroactively and paid all amounts due through August 2018, to force Plaintiff to seek alternative work. Prudential plans to move to dismiss Plaintiff's recently filed amended complaint on the grounds that the facts as admitted in the amended complaint uncontrovertibly demonstrate that this claim is factually unsupported. Indeed, the amended complaint itself discloses that, of the thirteen months, over eleven months of delay were due solely to Plaintiff's delay in filing his appeals; during at least five of those months, Plaintiff was working at a new firm at a salary comparable to his Capgemini salary. Plaintiff also plans to move to dismiss the breach of fiduciary claim, which is duplicative of his claim for benefits.

In the meantime, Plaintiff has served subpoenas on two claims administration firms, neither of which has had any involvement whatsoever in the administration of Plaintiff's claim for benefits at issue in this case. Each firm evidently handled aspects of disability claims that Plaintiff has asserted when he was working for two other employers, not the employer for which Prudential provided group disability coverage.

Plaintiff's subpoenas should be quashed both because they are premature until Plaintiff can respond to the obviously defective nature of his claim and because the subpoenas seek evidence that is not properly discoverable within the confines of a case seeking benefits under ERISA.

The Court should grant Prudential's motion, quash Plaintiff's subpoenas, and award Prudential its attorneys' fees and costs incurred with respect to this motion.

**II.     PROCEDURAL HISTORY**

Plaintiff filed this action in May 2019. In July 2019, Prudential answered the Complaint.

As summarized by the Court at the August 19, 2019 status conference, "Plaintiff's basic theory of the case is that the delay [in reviewing Plaintiff's claim for short-term disability

benefits] was not a good-faith review of the claim, but it was—and I understand it's pure allegation at this point, but it was—a policy or practice by Prudential to delay short-term benefits in order to incentivize people to go look for work, which then made them give up their long-term benefits under the plan." (Tr. 8/19/19 at 8:2-7.) Accordingly, the Court authorized limited discovery on the following questions posed by Plaintiff's counsel:

> [A]re these claims adjusters, when they're handling a claim, thinking about can we prevent someone from getting to long-term disability? Are they getting any instruction internally to do that? Are they even considering what will happen with coverage on long-term disability?

(Tr. 8/19/19 at 9:10-15.)

In accordance with the Court's direction, Prudential subsequently produced the claim file; responded to Plaintiff's requests for admissions and interrogatories, and offered to produce relevant excerpts of claims handling and other training manuals (as selected by Plaintiff from a table of contents) upon entry of a confidentiality order.[1]

At the December 17, 2019 status hearing, Plaintiff's counsel indicated that he planned to serve the subpoenas in question and Prudential's counsel indicated that Prudential was likely to move to quash because the proposed subpoenas would be well beyond the scope of appropriate discovery.

On January 29, 2020, Plaintiff's counsel informed Prudential that he had served Sedgwick "about two weeks ago" and Matrix on January 20, 2020. To date, however, Plaintiff has not served Prudential with copies of what was actually served on the non-party firms.

On January 29, 2020, the Court granted Plaintiff's motion to file an amended complaint, which then was duly filed. However, the facts as alleged by Plaintiff himself in the Amended

---

[1] An agreed confidentiality order was submitted for the Court's approval on January 24, 2020, and the motion for entry was granted on January 20, 2010.

Complaint undermine his entire case. His theory of intentional delay by Prudential fails because there was no delay by Prudential at all:

- On June 15, 2017, Prudential terminated short-term disability benefits (Compl. ¶¶ 18, 19), but Plaintiff did not appeal Prudential's adverse decision for five full months, until November 20, 2017. (Compl. ¶ 21.)

- **Three weeks later**, on December 12, 2017, Prudential upheld its decision. (Compl. ¶ 22), but Plaintiff did not take a second appeal from Prudential's adverse decision for another six full months, until June 14, 2018, even though he alleges he was represented by counsel for almost all of that period. (Compl. ¶¶ 24, 25.)

- **Less than six weeks later**, on July 24, 2018, Prudential reversed its decision and granted Plaintiff short-term disability benefits and paid him through August 2018. (Compl. ¶ 29.)

- After Prudential discovered that Plaintiff had been working at another firm for much of 2018, Prudential terminated benefits on November 27, 2018.

On these alleged facts, a claim for intentional delay by Prudential is obviously insufficient as a matter of law. As noted above, Prudential plans to file a motion to dismiss on these and other grounds.

### III. ARGUMENT

#### A. The Subpoenas Are Outside The Scope Of Discovery Permitted By The Court.

At the July 7, 2019 status hearing, the Court ordered that discovery was limited to the factors set forth in *Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 128 S.Ct. 2343 (2008)*, including whether Prudential's claims adjustors consider the impact of a short-term disability ("STD") claim decision on any future long-term disability ("LTD ") claims. (ECF No. 19. at p. 9.)

In *Glenn,* the Supreme Court held discovery in ERISA benefits disputes was sometimes warranted regarding an administrator's conflict of interest. Applying *Glenn,* the Seventh Circuit has held that discovery into an administrator's conflict of interest does not permit a plaintiff "to

supplement the administrative record without limit." *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 483 (7th Cir. 2009). In *Majeski*, the plaintiff sought to introduce a treating physician's deposition and the plaintiff's Social Security Disability award, neither of which were part of the administrative record. *Id*. The Court unequivocally rejected this argument, holding that "no credible reading of *Glenn* would require a plan administrator to reopen a closed appeal and consider a later Social Security award simply so that a reviewing court has a more complete record under which to examine the plan administrator's conflict of interest." *Id*. Clarifying further, the Court noted that even when, as in *Majeski*, an administrative record raises concerns about the claim administrator's claim handling, a court "need not delve into medical evidence that is irrelevant to its primary concern." *Id*. at 484.

  *Majeski* is on point here. Plaintiff seeks to put before this Court claim files from different claims administrators evaluating different claims filed at different times under different plans in an attempt to give the Court a "more complete record under which to examine" a conflict of interest. Moreover, the contents of these claim files are unquestionably irrelevant to Prudential's primary concern of determining Plaintiff's eligibility for benefits under the Capgemini plan. This Court must follow the Seventh Circuit's decision in *Majeski* and quash these subpoenas.

  Likewise, in *Edelman v. Roofers' Pension Fund*, No. 12 C 8221, 2014 WL 1660625, at *6 (N.D. Ill. Apr. 24, 2014), this Court rejected a plaintiff's attempt to supplement the administrative record with a favorable disability decision issued by a different plan, claiming that this award would demonstrate the defendant's "fiduciary unfaithfulness" and "procedural misconduct" in denying his disability pension benefits. *Id*. The Court held that "the mere fact [that one administrator's] benefits determination was contrary to [another's] does not prove the existence of bias or misconduct." *Id*. Similarly here, whether Sedgwick and Matrix approved

Plaintiff's STD claim under a different plan and at a different point are not germane to whether Prudential decided the at-issue claim correctly under the Capgemini plan. *See also Finlay v. Beam Glob. Spirits & Wine, Inc.*, 872 F. Supp. 2d 730, 735 (N.D. Ill. 2012) (declining to supplement the administrative record with depositions taken as part of a separate Title VII action because "evidence beyond the administrative record that purports to contradict the findings of the Employee Benefits Committee or the plan administrator is not considered").

As the subpoenas seek evidence outside the discovery authorized by the Court, the Court should quash the subpoenas.

> **B.  The Subpoenas Impermissibly Seek Documents Not Relevant To Any Party's Claims Or Defenses.**

Beyond the limitation set by the Court's discovery order in this case, the proposed subpoenas are inconsistent with the limitations set forth in *Estate of Blanco v. Prudential Insurance Company of America*, 606 F.3d 399 (7th Cir. 2010). In *Blanco,* the Court articulated four factors that courts must consider in determining whether extra-record discovery should be allowed in reviewing a claim for benefits *de novo*[2]: (1) whether "the new evidence is necessary to make an informed and independent judgment"; (2) whether the parties had an opportunity to present evidence at the administrative level; (3) whether the extra-record discovery relates to the plan terms as opposed to pertaining to historical facts concerning the claimant; (4) whether the administrator faces a conflict of interest. *Id.* at 402. The Seventh Circuit emphasized that "[t]he most important factor . . . is whether the new evidence is necessary to make an informed

---

[2] Prudential does not concede that the de novo standard applies, but the limitations on discovery under the de novo standard represent the maximum limit of discovery in an ERISA benefits case. While Plaintiff pleads breach of fiduciary duty and retaliation claims, both claims seek the same benefits and rest on the same theory as his claim for benefits. For that reason, no additional discovery is warranted on these claims.

judgment." *Id*. The *Blanco* court concluded that where the record is sufficient to make its determination, then it is not an abuse of discretion to deny discovery. *Id*.

Here, the *Blanco* factors clearly weigh in favor of quashing the subpoenas. First, the Sedgwick and Matrix claim files are not necessary for the Court to make an "informed and independent judgment." The claim file considered by Prudential contains all of the information it considered in deciding the claim for benefits, and thus gives the Court the evidence it needs to consider in addressing the propriety of Prudential's decision. That Plaintiff evidently believes that because Sedgwick and Matrix approved Plaintiff's STD claims on initial application, and Prudential did not, Prudential's decision making was somehow flawed is a red herring. Plaintiff received maximum benefits due under the STD plan administered by Prudential. Plaintiff also received all benefits due under the LTD plan insured and administered by Prudential. Prudential terminated his claim for LTD benefits when Prudential learned that Plaintiff had started a new job that paid him a gainful wage (mandatory grounds for termination under the LTD plan). Further, as shown above, virtually all of the time it took for Prudential to approve Plaintiff's STD claim was due to his own delay. The pleadings show that as soon as Plaintiff submitted the required information, Prudential promptly acted on the claim. The decisions made by other administrators under other plans and in different circumstances are of no relevance to whether Prudential made the correct decision under the Capgemini Plan. *See Novak v. Life Ins. Co. of N. Am.*, 956 F. Supp. 2d 900, 912 (N.D. Ill. 2013) (denying plaintiff's request to supplement the administrative record with an affidavit from a treating physician, whose opinions the administrator considered in reaching its decision, because the plaintiff failed to articulate why this affidavit would be "necessary for the court to form an independent and informed conclusion regarding her alleged disability"); *Edelman*, 2014 WL 1660625, at *9 (finding a favorable

benefits decisions issued by both the Social Security Administration and a different insurer to be irrelevant to the defendant insurer's decision).

Second, Plaintiff had the opportunity to present the documents he seeks from Matrix to Prudential during the administrative appeals process, but chose not to do so. By July 2018, Plaintiff was evidently receiving STD benefits under the STD plan administered by Matrix. (Compl. ¶¶ 26, 30.) Being unaware that Plaintiff had accepted other employment, on July 24, 2018 Prudential approved Plaintiff's claim for STD benefits under the Capgemini plan, and then approved Plaintiff's LTD claim on August 30, 2018. (Compl. ¶¶ 27-28.) After learning that Plaintiff had accepted employment with a different employer, rendering him ineligible for further LTD benefits under the Capgemini LTD plan, Prudential terminated Plaintiff's LTD claim on November 27, 2018. (Compl. ¶ 31.) Plaintiff appealed that decision on February 18, 2019. (Compl. ¶ 33.) By Plaintiff's own admission, he submitted "numerous pieces of evidence," including a declaration explaining why he had accepted a job with another employer. (Compl. ¶¶ 33-34.) Presumably, any medical evidence that was before Matrix came from Plaintiff and thus was available to him for submission to Prudential. Despite this, Plaintiff evidently chose not to provide the information to Prudential, foreclosing him from doing so now.

Plaintiff's subpoenas fail the third *Blanco* factor, whether the discovery relates to the plan terms, as well. Allowable discovery under this prong is very narrow, and plainly restricted to questions of plan interpretation. Here, the only question presented by this case is whether Prudential properly stopped paying benefits once it found out that Plaintiff had gone back to work with a different employer, thus disqualifying him from further benefits under the Capgemini plan. The claim files from Sedgwick and Matrix, which concern wholly different

decisions under different plans are entirely irrelevant to deciding whether Prudential's decision was in line with the terms of the LTD plan.

Finally, no discovery is warranted under the fourth factor, as the subpoenas due not seek information relevant to the issue of conflict of interest, for the reason addressed in Section A.

The Court should therefore grant Prudential's motion and quash the subpoenas.

## IV. CONCLUSION

For the reasons discussed above, the Court should quash the subpoenas Plaintiff issued to Sedgwick Claims Management, Inc. and Matrix Absence Services, Inc. and award Prudential its fees and costs incurred in preparing this motion.

**DATED: February 4, 2020**  Respectfully submitted,

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA


By: /s/ Jennifer E. Burgess
     One of Its Attorneys

Samuel M. Schwartz-Fenwick
sschwartz-fenwick@seyfarth.com
Jennifer E. Burgess, Bar No. 6292478
jeburgess@seyfarth.com

SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606-6448
Telephone:    (312) 460-5000
Facsimile:    (312) 460-7000

# **CERTIFICATE OF SERVICE**

I do hereby certify that on February 4, 2020, I electronically filed the foregoing DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO QUASH using the Court's CM/ECF method, and will send notification of such filing via U.S. Mail to the following:

>Michael Bartolic
>The Law Offices of Michael Bartolic, LLC
>208 South LaSalle St. Suite 1420
>Chicago, IL 60604-1254
>Telephone: 312-635-1600
>Facsimile: 312-635-1601
>Email:  mbartolic@michaelbartolic.com
>
>Attorney for Plaintiff

*/s/ Jennifer E. Burgess*
Jennifer E. Burgess
