### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| HARES MOHAMMED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 19 C 3258 |
| | ) | |
| | ) | |
| THE PRUDENTIAL INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | Judge John Z. Lee |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Hares Mohammed has sued The Prudential Insurance Company of America ("Prudential"), alleging that Prudential improperly denied his claim for disability benefits and breached its fiduciary duty in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), (a)(3). Prudential has moved to dismiss the action pursuant to Federal Rule of Civil P. 12(b)(6) and to quash Mohammed's subpoenas to third-party claims administrators. For the reasons below, Prudential's motion to dismiss is granted in part and denied in part, and its motion to quash is denied.

### I. Background[1]

Mohammed suffers from Parkinson's disease, an incurable degenerative condition that has "caused tremors and loss of motor functioning in his hands." Am.

---

[1] On a motion to dismiss, the court "accept[s] as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019).

Compl. ¶¶ 14–15, ECF No. 34. As a result of his condition, Mohammed stopped working for his employer, Capgemini America, Inc., in February 2017. *Id.* ¶ 16. Mohammed worked for Capgemini as a Network Engineer, a position that entailed typing work he could no longer perform due to his condition. *Id.*

As a Capgemini employee, Mohammed was a participant in Capgemini's short-term disability ("STD") and long-term disability ("LTD") plans, both of which are insured by Prudential. *Id.* ¶ 9. Prudential both determines participants' eligibility and pays benefits under these plans. *Id.* ¶ 10.

After Mohammed stopped working for Capgemini, Prudential approved his claim for STD benefits. *Id.* ¶ 18. But Prudential refused to extend these benefits beyond May 25, 2017, citing purported statements from Mohammed's "treating physician" that he was able to work. *Id.* ¶ 19. Several months later, in November 2017, Mohammed appealed the denial of his STD benefits, claiming Prudential had mischaracterized his doctor's statements and supplying "more recent notes from another doctor demonstrating his inability to perform his occupation." *Id.* ¶ 21. About three weeks later, Prudential upheld its denial. *Id.* ¶ 22.

The following month, in January 2018, Mohammed hired counsel in preparation for a second administrative appeal. *Id.* ¶ 24. Before appealing, however, Mohammed took a job at Transunion as a Network Engineer, allegedly out of financial desperation caused by Prudential's delay in approving his STD claim. *Id.* ¶ 26. Mohammed filed his second appeal in June 2018. *Id.* ¶ 25. This time,

2

Mohammed succeeded, and in July 2018, Prudential paid him the remainder of the STD benefits he was due under the plan. *Id.* ¶ 29.

Around the same time, Mohammed stopped working for Transunion because his condition "severely limited" his ability to work and caused him to miss deadlines. *Id.* ¶ 28. He then sought and received STD benefits under a plan insured by Transunion. *Id.* Transunion's plan administrator, unlike Prudential, immediately approved Mohammed's STD claim. *Id.*

Prudential also approved Mohammed's claim for LTD benefits and paid him up until the time he began working with Transunion. *Id.* ¶ 31. But Prudential denied LTD benefits thereafter, reasoning that Mohammed's income from Transunion constituted "disability earnings" that "exceeded 80% of his indexed monthly earnings" with Capgemini. *Id.*, Ex. 5, 11/27/18 Letter from B. Bartosz to M. Bartolic ("Denial Letter"), at 4, ECF No. 34-6.[2] Under Capgemini's LTD plan, "[d]isability earnings . . . include earnings from other employment that you receive for work which began after you became disabled. This would be, based on your restrictions and limitations . . . the work you are able to do . . . ." *Id., Ex. 3, Long Term Disability Plan ("LTD Plan"), at 15, ECF No. 34-4. Claims under the LTD plan terminate when a claimant's disability earnings exceed 80% of his indexed monthly earnings with Capgemini. *Id.* For his part, Mohammed claims his earnings with Transunion are not "disability earnings" under the plan because he was not "able to do" the work of a Transunion Network Engineer. *Id.* ¶ 41.

---

[2]     Specifically, Mohammed's monthly earnings with Transunion totaled $10,833.33, while his monthly earnings with Capgemini were only $10,262.83. Denial Letter at 4.

Mohammed appealed Prudential's denial of LTD benefits in February 2019. *Id.* ¶ 35. The next month, Prudential upheld the denial based on its prior interpretation of the plan's "disability earnings" provisions, though it "acknowledge[d] . . . Mohammed's medical condition and reported continuing disability from his Regular Occupation." *Id.,* Ex. 6, 3/6/19 Letter from A. Billines to M. Bartolic ("Appeal Decision"), at 3, ECF No. 34-7. In its letter upholding the denial, Prudential raised for the first time an alternative argument that Mohammed was not "disabled" under the plan because, in light of his income with Transunion, "he no longer experienced a 20% or more loss in his monthly earnings." *Id.*[3]

Rather than file a second appeal, Mohammed sued Prudential under two subsections of ERISA. Under 29 U.S.C. § 1132(a)(1)(B), Mohammed claims Prudential wrongly denied him LTD benefits based on an incorrect interpretation of the LTD plan. Am. Compl. ¶ 49. In the alternative, under 29 U.S.C. § 1132(a)(3), Mohammed argues Prudential breached its fiduciary duty in improperly delaying approval of his claim for STD benefits. *Id.* ¶ 54. Mohammed alleges this delay forced him to seek alternative employment that, in Prudential's view, disqualified him from receiving LTD benefits. *Id.* ¶¶ 55–56. In litigating this action, Mohammed has also subpoenaed two third-party claims administrators who paid

---

[3]     The plan's definition of "disability" requires that a claimant experience a loss of 20% or more in his monthly earnings. LTD Plan at 11. "[M]onthly earnings" are defined as "your gross monthly income from your Employer in effect just prior to your date of disability." *Id.* at 12. The plan further defines "Employer" as "the Contract Holder" (in this case, Capgemini). *Id.* at 5.

4

his claims for STD benefits "without any denials or terminations." Pl.'s Resp. Opp'n Mot. Quash at 4, ECF No. 50.

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

That said, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

## III. Analysis

### A. Prudential's Motion to Dismiss

#### 1. Claim for LTD Benefits Under 29 U.S.C. § 1132(a)(1)(B)

Prudential moves to dismiss Mohammed's § 1132(a)(1)(B) claim on two principal grounds: (1) Mohammed has not adequately pleaded that he is "disabled" within the meaning of the LTD plan; and (2) Mohammed has not adequately pleaded that his earnings with Transunion did not constitute "disability earnings" for the purposes of the LTD plan. Both arguments fail.

5

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Conkright v. Frommert*, 559 U.S. 506, 512 (2010) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). If the administrator or fiduciary possesses such discretionary authority, however, its "decision must be sustained unless arbitrary and capricious." *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009). Capgemini's plan grants Prudential discretionary authority to determine eligibility for benefits and to construe the terms of the plan. Am. Compl., Ex. 2, Short Term Disability Plan Administrative Services Agreement ("ASA"), at 23, ECF No. 34-3. As such, Prudential's decision to deny Mohammed LTD benefits must be sustained unless it was arbitrary and capricious.

Common law and "general principles of contract interpretation" govern review of ERISA benefit claims. *Cheney v. Standard Ins. Co.*, 831 F.3d 445, 450 (7th Cir. 2016) (quoting *Schultz v. Availl, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012)). Employee benefit plans should be interpreted in "an ordinary and popular sense, as [they] would [be understood by] a person of average intelligence and experience." *Sellers v. Zurich Am. Ins. Co.*, 627 F.3d 627, 632 (7th Cir. 2010) (quoting *Cannon v. Wittek Cos. Int'l*, 60 F.3d 1282, 1284 (7th Cir. 1995)).

When a plan administrator denies an employee benefit claim, it must "provide adequate notice" of the denial "in writing," complete with "the specific

reasons for such denial." 29 U.S.C. § 1133(1). This provision requires an administrator to give claimants "every reason for its denial of benefits at the time of the denial." *Reich v. Ladish Co.*, 306 F.3d 519, 524 n.1 (7th Cir. 2002). Courts will not countenance "*post hoc* attempt[s] to furnish a rationale for a denial of . . . benefits in order to avoid reversal on appeal." *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 696 (7th Cir. 1992) (internal quotation marks omitted). Indeed, "[d]enying a claim at the administrative appeal stage based on grounds not asserted in the initial claim denial is . . . a violation of ERISA's procedural requirements." *Grise v. Flair Interiors, Inc. Emp. Benefit Plan*, No. 1:12-CV-422, 2013 WL 1287328, at *5 n.8 (N.D. Ind. Mar. 27, 2013) (quoting *Brimer v. Life Ins. Co. of N. Am.*, 462 F. App'x 804, 809 (10th Cir. 2012)).

Prudential now insists that Mohammed has not alleged he is "disabled" under the LTD plan because "he no longer experienced a 20% or more loss in his monthly earnings" when he began working for Transunion. *See* Appeal Decision at 3. But Prudential did not voice this argument when it denied Mohammed LTD benefits initially and, thus, cannot rely on it now. Prudential's initial denial of LTD benefits rested solely on the contention that Mohammed's "disability earnings . . . exceeded 80% of his indexed monthly earnings." Denial Letter at 4. Prudential first advanced its alternative rationale that Mohammed is not "disabled" in its letter upholding the denial. *See* Appeal Decision at 3. Because Prudential's

"disability" argument was not raised at the time of denial, the Court will not consider it.[4]

Prudential also asserts that Mohammed has failed to state a claim for LTD benefits because "his monthly disability earnings [from his employment with Transunion] . . . exceeded 80% of his indexed monthly earnings." Denial Letter at 4. To the contrary, assuming, as the Court must, that the allegations in Mohammed's complaint are true, his earnings from his employment with Transunion were not "disability earnings" under the terms of the LTD plan. According to the plan, "[d]isability earnings . . . include earnings from other employment that you receive for work which began after you became disabled. This would be, based on your restrictions and limitations . . . *the work you are able to do* . . . ." LTD Plan at 15 (emphasis added). The sentence beginning "[t]his would be" modifies the immediately preceding sentence, referring to "earnings from other employment." *See Price v. Wyeth Holdings Corp.*, 505 F.3d 624, 631 n.6 (7th Cir. 2007) (noting that a limiting clause modifies "immediately preceding language"). Thus, the plan's definition of "disability earnings" includes earnings a claimant receives from other employment for work he is able to do.

---

[4]     Even if Prudential had properly raised this justification in its initial denial, it would lack merit. As discussed above, the plan defines "monthly earnings" as a participant's gross monthly income from his Employer, and "Employer" is defined as Capgemini. LTD Plan at 5, 11, 12. As such, per the plain language of the LTD plan, "monthly earnings" *only* include income from Capgemini. Therefore, viewing the allegations in the complaint as true, Mohammed experienced a "total loss" of monthly earnings when he stopped working for Capgemini. Pl.'s Resp. Opp'n Def.'s Mot. Dismiss at 4, ECF No. 53.

Mohammed has adequately pleaded that he was unable to do the work of a Network Engineer, the position he held with Transunion. According to the complaint, Mohammed lacked sufficient motor control to type on a computer keyboard, one of the primary duties of a Network Engineer. Am. Compl. ¶ 20. Mohammed also alleges that the Transunion job involved remote work that enabled him to conceal his disability. *Id.* ¶ 27. Mohammed soon began missing deadlines at Transunion and went on short-term disability roughly five months after starting with the company. *Id.* ¶ 28. These specific allegations, taken as true, indicate that Mohammed was not "able to do" his job as a Network Engineer. Therefore, Mohammed has plausibly alleged that his earnings from Transunion do not qualify as "disability earnings" under the LTD plan. Accordingly, Mohammed has adequately pleaded that Prudential's denial of LTD benefits was contrary to the plain, unambiguous language of its plan, and therefore arbitrary and capricious. Prudential's motion to dismiss Mohammed's § 1132(a)(1)(B) claim is thus denied.

### 2.    Claim for Equitable Relief Under 29 U.S.C. § 1132(a)(3)

Prudential attacks Mohammed's § 1132(a)(3) claim under the theory that it improperly duplicates his § 1132(a)(1)(B) claim. The Court agrees.

As a general matter, plaintiffs may seek "appropriate equitable relief" to redress violations of ERISA. 29 U.S.C. § 1132(a)(3). But relief under (a)(3) is typically not "appropriate" when Congress has "elsewhere provided adequate relief" for the plaintiff's injury. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). In the wake of *Varity*, most Courts of Appeals have held "that if relief is available to a plan

participant under subsection (a)(1)(B), then that relief is *un* available under subsection (a)(3)." *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009) (spacing and emphasis original). The Seventh Circuit has seen "no reason to depart" from this consensus. *Id.* Courts in this district have read *Varity* and *Mondry* as permitting, if not mandating, dismissal of (a)(3) claims that duplicate (a)(1)(B) claims. *See Andujar v. Sun Life Assurance Co. of Can.*, No. 14 C 2792, 2014 WL 4099800, at *2 (N.D. Ill. Aug. 20, 2014) (listing cases). An (a)(3) claim may survive dismissal if it is "premised on different facts or seek[s] different remedies" from an (a)(1)(B) claim, *Day v. Humana Ins. Co.*, No. 19 C 3141, 2020 WL 2836761, at *11 (N.D. Ill. June 1, 2020), but dismissal is appropriate when "it is plain from the plaintiff's complaint" that his (a)(3) claim merely "repackag[es]" his (a)(1)(B) claim. *Craft v. Health Care Serv. Corp.*, No. 14 C 5853, 2016 WL 1270433, at *6 (N.D. Ill. Mar. 31, 2016).

Mohammed's (a)(3) claim is practically indistinguishable from his (a)(1)(B) claim. To begin, the claims seek substantially identical remedies. Under his (a)(1)(B) claim, Mohammed asks the Court to "award" him "all past due benefits" and "declare his right to reinstatement of the benefits in the amount equal to the contractual amount of benefits to which he is entitled retroactively and prospectively as long as he remains disabled." Am. Compl. at 10. Mohammed's (a)(3) claim seeks a host of remedies that are ostensibly equitable, but all of them would result in Prudential paying Mohammed benefits he already demands under

(a)(1)(B). *See id.* at 12. Accordingly, Congress has provided "adequate relief" for Mohammed's injury under (a)(1)(B). *See Varity*, 516 U.S. at 515.

Mohammed's claims also rest on the same operative fact: Prudential's denial of his LTD benefits. Mohammed insists that his claims are distinct because his (a)(1)(B) claim challenges Prudential's interpretation of the LTD plan, while the (a)(3) claim addresses Prudential's alleged misconduct in reviewing his STD claim. Pl.'s Resp. Opp'n Mot. Dismiss, Ex. 1, Table Showing Counts I and II Are Not Duplicative ("Table"), at 1, ECF No. 53-1.

But this is a distinction without a difference. In *Zuckerman v. United of Omaha Life Insurance Co.*, the plaintiff brought an (a)(1)(B) claim for LTD benefits as well as an (a)(3) claim for breach of fiduciary duty; the latter claim theorized that the administrator "misled [the plaintiff] as to the time frame she had in which to file her claim for LTD benefits." No. 09-CV-4819, 2010 WL 2927694, at *8 (N.D. Ill. Jul. 21, 2010). The court dismissed the (a)(3) claim because the plaintiff had alleged no harm "separate and distinct from the denial of benefits," and therefore "absent the denial of benefits," the administrator's alleged misrepresentations would have caused the plaintiff "no injury." *Id.* at *7.

*Zuckerman* is on point here. Mohammed has not alleged any harm separate and distinct from Prudential's denial of his LTD benefits, and absent the denial of those benefits, Prudential's alleged breach of fiduciary duty in its review of his STD claim would have caused him no injury.[5] Accordingly, Mohammed's (a)(3) claim

---

[5]     Straining to find some harm distinct from Prudential's denial of LTD benefits, Mohammed asserts he was "subject[ed] . . . to Defendant's discretionary interpretation" of

11

merely duplicates his claim for improper denial of benefits and is therefore dismissed.

## B.  Prudential's Motion to Quash Mohammed's Subpoenas

Prudential moves to quash Mohammed's subpoenas on the grounds that they are irrelevant to Mohammed's claims and exceed the scope of discovery permitted by this Court.  Prudential is incorrect on both scores.

Federal Rule of Civil Procedure 45 allows a party to issue a subpoena for documents and other things in the custody or control of a non-party.  It also sets forth criteria pursuant to which a subpoena can be quashed.  In reviewing a motion to quash, the court must ask if the subpoena: (i) fails to allow a reasonable time to comply; (ii) requires a non-party to travel more than 100 miles to comply; (iii) compels disclosure of privileged matter; or (iv) subjects the respondent to an undue burden.  Fed. R. Civ. P. 45(c)(3)(A)(i)–(iv).

Usually, motions to quash are brought by the subpoena's recipient.  However, in certain cases, another party (or non-party), who believes it will be negatively impacted if the recipient responds, can move to quash.  Courts generally deny such motions under the rationale that the movant lacks standing to bring the motion.  However, such motions are appropriate "if the subpoena infringes upon the movant's legitimate interests." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982).  Such legitimate interests include privilege or privacy interests in the

---

the "LTD plan, to which he would not have been subject but for Defendant's breach of fiduciary duty." Table at 1. But Prudential's "discretionary interpretation" of the LTD plan only harmed Mohammed insofar as Prudential used that discretion to deny him LTD benefits.

subpoenaed material. *Hard Drive Prods. v. Does 1–48*, No. 11 CV 9062, 2012 WL 2196038, at *3 (N.D. Ill. June 14, 2012).

At the outset, Prudential does not appear to have standing to bring this motion. Prudential has failed to assert privilege, privacy, or any other legitimate interest in the material sought. What is more, Prudential's motion does not even reflect the position of the subpoenaed entities, who "readily produced the requested documents." Pl.'s Resp. Opp'n Mot. Quash at 1. But even if Prudential had standing to challenge these subpoenas, its motion would fail on the merits.

As discussed above, Prudential's denial of LTD benefits is subject to an "arbitrary and capricious" standard of review. Under this standard, review is typically "limited to the administrative record." *Krolnik*, 570 F.3d at 843. But "additional discovery is appropriate" in certain "exceptional cases" in order "to ensure that plan administrators have not acted arbitrarily and that conflicts of interest have not contributed to an unjustifiable denial of benefits." *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 814–15 (7th Cir. 2006). A plaintiff requesting additional discovery must satisfy *Semien*'s two-part test by "identify[ing] a specific conflict of interest or instance of misconduct" and by "mak[ing] a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination." *Id.* at 815. And "the district court has significant discretion to allow or disallow discovery requests" in such instances. *Id.* at 814.

After *Semien*, the Supreme Court, in *Metro Life Insurance Co. v. Glenn*, held that a plan administrator who "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket" suffers from an inherent "conflict of interest." 554 U.S. 105, 108 (2008). Courts must therefore consider this conflict "as a factor in determining whether the plan administrator has abused its discretion in denying benefits." *Id.* *Glenn* "implies a role for discovery" into a plan administrator's conflict of interest and represents a "softening, but not a rejection, of the [two-part] standard announced in *Semien*." *Dennison v. MONY Life Ret. Income Sec. Plan for Emps.*, 710 F.3d 741, 747 (7th Cir. 2013).

As mentioned, Prudential both determines eligibility and pays benefits under Capgemini's plan. Accordingly, Prudential suffers from the structural conflict of interest described in *Glenn*. Mohammed may seek limited discovery into that conflict if he satisfies *Semien*'s two-part test.[6]

First, Mohammed must identify a specific conflict of interest or instance of misconduct on Prudential's part. "The mere presence of the structural conflict" discussed in *Glenn*, without more, "is insufficient to open the door to discovery." *Brubaker v. Hartford Life & Accident Ins. Co.*, No. 18 C 4995, 2019 WL 3825489 (N.D. Ill. Aug. 15, 2019) (citing *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 364–65 (7th Cir. 2017)). Plaintiffs are entitled to discovery only in "exceptional cases" that raise a "suspicion of bias or misconduct" on the part of the plan administrator.

---

[6]     Mohammed characterizes the subpoenas as related solely to his (a)(3) claim. Pl.'s Resp. Opp'n Mot. Quash at 11. But that claim has been dismissed, and the Court in its discretion has determined the subpoenas also are relevant to Mohammed's (a)(1)(B) claim.

14

*Weddington v. Aetna Life Ins. Co.*, No. 15 C 1268, 2015 WL 6407764, at *3 (N.D. Ill. Oct. 21, 2015) (internal quotation marks omitted).

Here, Mohammed has sufficiently shown that his case is exceptional. Mohammed has alleged a specific pattern of misconduct on Prudential's part: deliberate delay in approving meritorious STD claims in order to avoid liability for LTD claims. Two plan administrators, who were not asked to provide LTD benefits, approved Mohammed's STD claims immediately, while Prudential, who did face LTD liability, only approved Mohammed's STD claim after two appeals. These facts give rise to colorable suspicion that Prudential was attempting to avoid LTD liability in adjudicating Mohammed's disability claims and casts a cloud over Prudential's review of Mohammed's LTD claim.

Accordingly, this is no mere "run-of-the-mill" case in which all the plaintiff alleges is that the administrator improperly weighed the evidence related to his claim. *See Weddington*, 2015 WL 6407764, at *4 (internal quotation marks omitted) (denying conflict discovery outside the administrative record because the plaintiff challenged only the "merits" of the plan administrator's determination). Unlike the plaintiff in *Weddington*, Mohammed has raised the possibility that Prudential's decisionmaking process in his case was structurally tainted in a material way, regardless of the merits of his claim. As such, Mohammed has met his burden under the first prong of the *Semien* test.

Mohammed also has shown good cause to believe that the discovery he seeks will reveal a procedural defect in Prudential's determination. As Mohammed points

15

out, "the other two claims administrators considered disability of (1) the same person, (2) with the same chronic and progressive illness, (3) experiencing the same symptoms of hand tremors and loss of motor functioning, (4) from the same job of Network Engineer[,] requiring heavy keyboarding." Pl.'s Resp. Opp'n Mot. Quash at 3–4. Mohammed's requested discovery "isolate[s] the variable" of LTD liability: because Prudential was subject to LTD liability while the other administrators were not, one might plausibly conclude the difference between Prudential's and the other administrators' determinations was the product of Prudential's incentive to avoid LTD liability. *Id.* at 1. Thus, Mohammed's requested discovery is relevant to showing whether Prudential approaches disability claims with an eye toward skirting LTD liability.

Prudential protests that "decisions by other claims administrators applying different plan terms can shed no light" on its own conflict of interest. Def.'s Reply Supp. Mot. Quash at 3, ECF No. 63. It is true that the other administrators may use different plan terms than Prudential, but, at this point in the litigation, it is unknown whether the other plans are so different that it accounts for the divergent outcomes in Mohammed's STD claims.

In support of this view, Prudential cites *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478 (7th Cir. 2009). But *Majeski* merely held that the district court did not err in refusing to consider a physician's deposition and a Social Security disability award from outside the administrative record in a conflict-of-interest case. *Id.* at 482–83. *Majeski* did not address the relevance of decisions from other ERISA plan

administrators in conflict cases; nor does anything in the opinion stand for
Prudential's extraordinary proposition that third-party benefit determinations can
never be of use in evaluating a plan administrator's conflict of interest.

In any event, Prudential's per se approach is incompatible with *Glenn*, which
discouraged courts from creating "special . . . evidentiary rules" or "one-size-fits-all
procedural system[s]" in weighing an administrator's conflict of interest. 554 U.S.
at 116. *Glenn* expressly declined to give courts a "detailed set of instructions" in
cases like these, finding only that judges should consider conflicts of interest "as a
factor" in reviewing an administrator's benefit determination. *Id.* at 119.

Exercising its discretion to allow or disallow discovery requests, the Court
finds that Mohammed's subpoenas are relevant to his case. To reiterate, the fact
that other claims administrators not subject to LTD liability approved Mohammed's
disability claims immediately, while Prudential did not, may support the inference
that the prospect of LTD liability influenced Prudential's review of Mohammed's
claims. Accordingly, Mohammed's subpoenas have a tendency to make a
consequential fact more probable than not, *see* Fed. R. Evid. 401, and Mohammed's
subpoenas pass muster under Fed. R. Civ. P. 26(b)(1).

Prudential also insists that Mohammed's subpoenas exceed the scope of
discovery authorized by this Court. Prudential claims that, at a status hearing on
July 30, 2019, the Court limited discovery "to the factors set forth" in *Glenn*. Def.'s
Mem. Supp. Mot. Quash at 4, ECF No. 39. But, as discussed above, *Glenn* did not
limit courts' review of an administrator's conflict of interest to any discrete set of

"factors." Consistent with *Glenn*, the Court specifically avoided setting any bright-line rules regarding conflict discovery. Indeed, a review of the transcript from the July 30 hearing belies Prudential's assertion. *See generally* 7/30/19 Tr., ECF No. 19.

## Conclusion

For the reasons set forth above, Prudential's motion to dismiss is granted as to Mohammed's claim under 29 U.S.C. § 1132(a)(3), and denied as to his claim under 29 U.S.C. § 1132(a)(1)(B), and Prudential's motion to quash Mohammed's subpoenas is denied.

**IT IS SO ORDERED.**                    **ENTERED  8/7/20**

_____

**John Z. Lee**
**United States District Judge**

18